S. B. CONREY *v.* T. B. HOOVER.

A broker sold bills of exchange which were not paid at maturity. He afterwards assisted the acceptors in effecting an arrangement to secure their payment by mortgage. *Held*, that in the latter transaction he acted as an attorney in fact, and not as broker, and therefore, he could not recover a broker's commission for the service. C. C. 1986, 2960, 2986.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Olcott*, for plaintiff. *Henderson*, for defendant and appellant.

VOORHIES, J. *Maunsel White & Co.* employed the plaintiff and paid him a commission as broker to sell certain bills of exchange, of which they were the acceptors, amounting to $40,230 50, and the defendant became the purchaser thereof. Those bills were dishonored at maturity, and the paper of that firm became depreciated in value from 20 to 35 per centum. *Maunsel White* then renewed and secured those bills by a mortgage on his property in favor of the defendant, who granted him a prolongation of the term. This arrangement appears to have been effected through the agency of the plaintiff after several interviews with Mr. *White*. The settlement was made in presence of the defendant, who received the mortgage notes in lieu of those protested. The deed of mortgage was prepared under the directions of both the plaintiff and *Maunsel White*.

For the services thus rendered the plaintiff claims $815 92, and the further sum of $33 44, "for brokerage in renewing protested paper of *G. Burke & Co.*, without obtaining mortgage, say $3,344 at 1 per cent."

The defendant is appellant from a judgment rendered against him in favor of the plaintiff for these two sums.

The principal ground on which he rests his defence is, that the plaintiff, as broker, sold him the bills, and then under the pretence of friendship, and affecting to be desirous to aid him in securing the same, officiously obtruded himself in the settlement made by defendant with *Maunsel White & Co.*

The testimony of *S. W. Taylor*, the only evidence touching the protested paper of *G. Burke & Co.*, shows that the witness himself settled the matter directly with *Hoover* in presence of *Conrey.*

On the one hand we have before us the testimony of three witnesses. *The first* proves that he considers the value of the services rendered by the plaintiff to be fully worth 2½ per cent. on the amount of the matter adjusted : the witness is not a broker. *The second witness* says, that he knows of no customary rate of charge by brokers for the settlement of protested paper, *as it does not come under the head of brokerage rates.* He would say that 5 per cent. on the amount arranged ($40,796) would be a low compensation. As soon as a sale of paper is effected by him, he considers his duty at an end. Should it afterwards be protested and the vendee apply for his aid to secure its payment, and he did so, he would charge for his services. This is not legitimate brokerage, but agency ; and he *never did such business.* He might charge for it one per cent., ten per cent. ; it would depend altogether upon the services. He would not consider it his moral or legal duty to aid a party to whom he sold paper, which was afterwards protested, to secure it. *The third* witness says that he is a broker; that after he has sold paper to a party, he considers that he has done with the transaction. He would not give his aid to the purchaser to secure such paper, unless his commission were paid; and would make the same charge as broker when he sold the paper, *and not as agent ; and this he believes to be the custom.*

On the other hand we have also the testimony of three witnesses : *The first says,* he is a broker in this city ; whenever he has procured paper for a party the payment of which was delayed, he used all his exertions to procure the payment of that paper without any charge, and this has always been his custom. He considers it to be the interest of the broker, in order to get business that he should exert himself to secure the payment of paper sold by him to a party. *The second witness* says, that he is and has been a broker for twelve years ; when a party purchases paper from him as a broker, and which is not paid at maturity, he considers himself bound to assist the purchaser in obtaining the payment thereof, without any charge. It occurred only in three or four cases that paper sold by him was not paid at maturity, and he assisted the parties to secure their money. *The third witness* says that he is and has been a broker for twelve years : that it is not usual or customary for a broker to charge the buyer any commissions for aiding to secure paper which he has sold him. The highest commission charged for the sale of paper, which is paid by the seller, is one per centum. After the sale, he considers his obligation legally at an end, but at the same time thinks it is his moral duty to assist in securing the debt when it becomes doubtful or is protested, without any charge.

Upon this state of facts the question arises, is the defendant liable to the plaintiff for any commission or compensation ? If so, for what amount?

It is perfectly clear that the services were not rendered by the plaintiff as broker. "The broker or intermediary is he who is employed to negotiate a

a matter between two parties, and who, for that reason, is considered as the mandatory of both." C. C. 2985. It is a trade or occupation. There are various classes of brokers. Their commissions are generally regulated by usage. The testimony of one of the witnesses shows that the highest rate of commission or brokerage for the sale of paper in this city is one per centum. Hence it follows that the alleged services were rendered by plaintiff, *not as a broker*, but as an attorney in fact. "The procuration is gratuitous unless there have been a contrary agreement." C. C. 2960. This Article corresponds with Article 1986 of the Napoleon Code. Duranton, in his commentary upon it says: "Au surplus, quoique le mandat soit *gratuit de sa nature*, cela n'est vrai au moins que dans le cas où on peut le considérer comme un office d'ami, et non lorsqu'il est *l'exercice d'une profession.* Dans le dernier cas, le salaire est dû suivant la nature de l'affaire, et au taux *réglé par la loi ou l'usage ;* il est censé stipulé au moins. Tel est le cas où je charge un avoué de s'occuper pour moi dans telle affaire, un agent de change de me vendre ou de m'acheter des rentes sur l'Etat, un commissionnaire de vendre mes vins, &c. &c., dans tous ces cas et d'autres analogues, *je dois le salaire d'usage :* il est tacitement convenu." 18 Dur. No. 187. How then can it be urged that the plaintiff's claim results from the exercise of a profession, and that his commission is regulated by law or usage—"le salaire est du suivant la nature de l'affaire et au taux réglé par la loi ou l'usage ?" There being no contrary agreement, it is clear that the procuration in this case must be looked upon as gratuitous, a mere *office d'ami.* It was natural under the obligations imposed on him by law as broker or intermediary, that the plaintiff should have lent his assistance to the parties to carry out the original contract in good faith. C. C. 2986. There is not a single case mentioned by any of the plaintiff's witnesses, in which compensation has ever been claimed or allowed for such services, whilst on the other hand it is shown that similar services have been rendered without any compensation.

On the hypothesis that the plaintiff is entitled to recover anything, the amount claimed and awarded to him is manifestly exorbitant and disproportioned to the value of his services. Taking 35 per cent. as the highest estimate of the depreciation of the paper of *Maunsel White & Co.*, it results then that the amount really secured was only $11,199, and that the plaintiff's commission amounts to $815 92. The calculation of interest on eleven bills made by the plaintiff for the defendant and by Mr. *Carl Kohn* for *Maunsel White & Co.*, constituted the settlement. Under all the circumstances of the case, it is clear that the plaintiff is not entitled to judgment without proof of a special agreement, of which we find none in the record.

It is, therefore, ordered that the judgment of the District Court be reversed, and the plaintiff's demand dismissed as in case of non-suit.

SPOFFORD, J. I concur in the decree only upon the ground that the evidence is not sufficiently explicit as to the extent and value of the plaintiff's services to the defendant.